**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIS WILLIAMS,

       Plaintiff,

   v.

BROWN FAMILY COMMUNITIES,

       Defendant.

_____/

No. C-05-1337  JCS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE [Docket No. 3]**

**I.      INTRODUCTION**

     Plaintiff, Christopher Williams, a California resident, entered into a contract to purchase a home that was to be built in a Phoenix, Arizona subdevelopment by Defendant, Brown Family Communities ("Brown").  On February 28, 2005, Williams brought a breach of contract action in California Superior Court.  Brown removed the action to this Court, and now brings a Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Motion to Transfer Venue ("the Motion").  The Court determines that the Motion is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the Motion is GRANTED.

**II.     BACKGROUND**

    **A.      Facts**

     In June 2004, Williams entered into a purchase agreement with Brown for the purchase of a new home, which was to be built  in Quail Hollow, a subdevelopment in the vicinity of Phoenix, Arizona.  Compl. at 2, ¶ 6.  Brown is "an Arizona entity engaged in the business of building residential communities exclusively in the state of Arizona."  Motion Ex. A, Affidavit of Robert Venberg ("Venberg Decl.") at 1, ¶2.

**United States District Court**

For the Northern District of California

1  Williams was represented by an Arizona real estate agent, Congress Realty, Inc. ("Congress"),[1] and

2  apparently learned of the available lot through Congress.  Greisiger Decl. at ¶ 3.  According to Brown sales

3  representative James Greisiger, Congress contacted Brown on Williams behalf to inquire about properties

4  at Quail Hollow.  *Id*.  When Greisiger told Congress there was an available lot, Congress brought Williams'

5  security deposit to Brown's office and, exercising a power of attorney  signed by Williams, selected the

6  upgrade options for the home.  *Id*.  Greisiger states in his declaration that neither he nor anyone else at

7  Brown had had any contact with Williams prior to the inquiry by Congress.  *Id*. at ¶ 5.

8           On June 15, 2004, Plaintiff executed an eight-page "Purchase Agreement and Receipt for Deposit"

9  ("Purchase Agreement") for the lot and home ("the Property") for a price of $161,068.00.  *See* Williams

10 Decl. at 1, ¶ 2 & Ex. A (Purchase Agreement).[2]  According to Plaintiff, he executed the Purchase

11 Agreement in San Francisco, California.  Williams Decl. at 1, ¶ 2.  The Purchase Agreement, which

12 contains an Arizona choice of law provision, shows Plaintiff's home address in San Francisco and home

13 telephone number with a 415 area code.  Purchase Agreement at 1; Williams Decl., Ex. A at 1.  Michael

14 Brown, a representative of Defendant, signed the Purchase Agreement in Defendant's Tempe, Arizona

15 office on July 9, 2004.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively,

16 Motion to Transfer Venue ("Motion") at 2, ¶ 4; Venberg Decl.  at 1, ¶ 4; Purchase Agreement at 8.

17          Williams obtained preliminary loan approval to finance the purchase of the Property from MDJ

18 Mortgage.  Williams Decl. at 2, ¶ 7; *see also* Venberg Decl. at 1, ¶ 5.  Williams states in his declaration

19 that MDJ is "to the best of [his] knowledge a wholly owned and controlled company" of Brown.  Williams

20 Decl. at 2, ¶ 4.  The only evidence in the record, however, indicates that while there may be some

21 connection between Brown and MDJ, MDJ is not owned by Brown.  *See* Reply, Ex. B (Records of the

22

23 _____

24        [1]  Although Williams does not mention Congress in his Opposition, he  does not dispute Defendant's
   assertion that Williams hired Congress to "help him locate a second home."  Motion, Ex. B (Affidavit of James
25 M. Greisiger ("Greisiger Decl.")), ¶ 2; see also Williams Decl., Ex. B (Realtor-Client Registration Form,
   reflecting that Congress represented Williams in the purchase of the Property.
26
         [2]  Plaintiff alleges in his complaint that he executed the Purchase Agreement on June 19, 2005 rather
27 than June 15, 2005, as stated in his declaration.  Complaint at 2, ¶ 6.  The latter date appears to be correct.
   In particular, the Purchase Agreement reflects that it was received by Brown on June 15, 2005.  *See* Purchase
28 Agreement at 1.

**United States District Court**
For the Northern District of California

1   Arizona Corporation Commission reflecting that MDJ Mortgage is owned by four individuals, including

2   Michael D. Brown and Lisa A. Brown).

3         In June and July of 2004, Plaintiff and his realtor executed three addenda to the Purchase

4   Agreement, ordering various upgrades for the  home (flooring, appliances, landscaping, etc.).  Williams

5   Decl. at 2, ¶ 8; Ex. D.[3]   According to Williams, he had "numerous discussions" with Brown "and/or its

6   agents, including MDJ" in connection with these addenda.  Williams Decl. at 2, ¶ 8.  The upgrades brought

7   the total purchase price to $167,980.  Defendant's Reply, Ex. A, Affidavit of James M. Greisiger

8   ("Greisiger Reply Decl.") at 1, ¶ 1.

9          The addenda reflect a "Settlement Date" of December 28, 2004.  *Id*.  However, according to

10  Plaintiff, Brown failed to turn over title by that date, after repeated demands by Plaintiff.  Williams Decl. at

11  2, ¶ 8.  On February 7, 2005, Plaintiff's attorney, Brian Donnelly, sent Brown a letter demanding that

12  Brown close the sale before March 7, 2005, regardless of the stage of completion of the home.  *See*

13  Declaration of Brian Donnelly, Esq. in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction

14  and Motion to Transfer Venue ("Donnelly Decl.") at 1-2, ¶¶ 2-9 & Ex. A (February 7, 2005 Letter).

15  According to Donnelly, Brown sent him an e-mail on February 8, 2005, refusing to close the purchase by

16  March 7, 2005.  Donnelly Decl. at 2, ¶ 4.  On February 15 and 17, Donnelly sent Brown two more letters

17  demanding the purchase be closed by March 7, 2005, and threatening litigation if Brown did not agree to

18  arbitrate pursuant to the arbitration provision in the Purchase Agreement.  *Id*. at 2, ¶¶ 5, 7.  Brown

19  responded in a letter dated February 23, 2003, rejecting Plaintiff's demand and asserting  that "any attempt

20  to file an arbitration or litigation will needlessly waste time and money" because, among other things,

21  Williams had materially breached the Purchase Agreement when he failed to obtain loan approval after the

22  initial approval fell through.  Greisiger Reply Decl., Ex. C (February 23, 2005 Letter).[4]  Brown offered to

23  allow Williams to rescind the contract and obtain a refund on his deposit if he responded by February 28,

24

_____

25        [3]  Although Williams states in his declaration that four addenda were executed, the record contains only
     three addenda, dated June 15, June 23, and July 26, 2004.  *See* Williams Decl., Ex. D.

26

27        [4]  According to the February 23, 2005 Letter, "[a]lthough Mr. Williams initially obtained preliminary
     loan approval, his approval was revoked when he opted to exercise a 1031 exchange.  We also understand
     that his credit history has materially deteriorated because he incurred additional debt after the preliminary

28  underwriting phase.  As such, Mr. Williams is currently in breach of the contract."

1   2005, but stated that after that date it would terminate the contract without refunding the deposit.  On

2   February 28, 2005, Plaintiff initiated this action.

3       **B.    Procedural Background**

4       In his Complaint, Plaintiff alleges that although the addenda to the Purchase Agreement indicated

5   that the settlement date for the property was December 28, 2004, and although Plaintiff made repeated

6   demands for performance, Defendants failed to deliver the Property to Plaintiff by December 28, 2005.[5]

7   Complaint at 2, ¶¶ 6-10.  Plaintiff demands damages and "specific performance of the Purchase

8   Agreement," as well as attorneys' fees and costs.  The Complaint specifies no dollar amount for damages.

9       Defendant removed the action to this Court on April 1, 2005, pursuant to 28 U.S.C. § 1446(a),

10  alleging that federal diversity jurisdiction existed under 28 U.S.C. § 1332 because Plaintiff was a California

11  resident, Defendant was an Arizona resident, and the amount in controversy exceeded $75,000.  Notice of

12  Removal at 1.  On April 4, 2005, Defendant filed the instant Motion.

13      **C.    The Motion**

14      Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(2), or

15  alternatively, to transfer this case to the District of Arizona under Rule 12(b)(3).  Motion at 1.  Defendant

16  contends that exercise of personal jurisdiction over it would violate the Due Process clause of the U.S.

17  Constitution  – which governs the personal jurisdiction inquiry under California's long-arm statute –

18  because: 1) it has not purposefully availed itself of the privilege of the conducting activities in California; and

19  2) exercise of personal jurisdiction would not comport with the principles of fair play and substantial justice.

20  In support of its position, Brown points to evidence that Brown has virtually no on-going contacts with

21  California:

22          Brown does not sell, provide services or transact any business in California.
            Brown is not licensed or authorized to do business in California.  Brown
23          maintains no offices, records, accounts, salespersons, or agents in
            California.  Brown does not own any real property, personal property or
24          other assets in California.  Brown does not advertise in California.

25

26

27  _____

28      [5]  Although the Complaint does not list any specific claim or claims, it appears to assert only a claim
        for breach of contract.

4

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Venberg Decl. at 1, ¶ 3.  In the alternative, Defendant argues that the Court should transfer venue to the

2   District of Arizona "because the witnesses, property, and defendant are all located in Arizona."  Motion at

3   7-8.

4          In his Opposition, Plaintiff claims that subject matter jurisdiction is improper in this Court because

5   the amount in controversy does not exceed $75,000.  Opposition at 3-4.  In support of this assertion,

6   Plaintiff stipulates that he will not seek damages in excess of $75,000 and waives his request for specific

7   performance.  Declaration of Brian Donnelly, Esq., in Opposition to Motion to Dismiss for Lack of

8   Personal Jurisdiction and Motion to Transfer Venue ("Donnelly Decl.") at 3, ¶¶ 111-12.  Plaintiff also

9   asserts that specific performance is impossible in any event because the contract had to be completed by

10  December 28, 2004.   Plaintiff argues further that there is personal jurisdiction over Brown because Brown

11  was aware that Plaintiff was a California resident when it entered into the Purchase Agreement and

12  therefore knew that he would be harmed in California.  In his discussion of personal jurisdiction, Plaintiff

13  treats Brown and MDJ as a single entity.  Finally, with respect to venue, Plaintiff asserts that venue in this

14  district is proper under 28 U.S.C. § 1441(a), which provides that in removed actions, venue is proper in

15  the district court for the district in which the action was pending.  Plaintiff also asserts that a convenience

16  transfer is not appropriate here because the balance of hardships does not tip strongly in favor of

17  Defendant.

18         Defendant in its Reply argues that this Court has subject matter jurisdiction, notwithstanding

19  Plaintiff's stipulations regarding damages and specific performance, because the amount-in-controversy

20  requirement need only be met at the time of removal.  Reply at 1. Subsequent stipulations limiting the relief

21  sought cannot divest this Court of jurisdiction.  Reply at 1.  Defendant argues further that at the time of

22  removal, the amount-in-controversy requirement was met because Plaintiff sought damages for lost taxes

23  "in excess of $60,000" as well as specific performance of the Purchase Agreement.  *Id.* at 2; Donnelly

24  Decl. Ex. A (letter from Donnelly to Defendant).  According to Defendant, the value of specific

25  performance *alone* satisfies the amount-in-controversy requirement because the price set forth in the

26  Purchase Agreement and subsequent addenda is substantially lower than the current value of the Property.

27  In particular, Defendant presents evidence that the value of the Property increased from $167,980 in July

28  2004 to $260,845 in June 2005 – an appreciation of $92,865.  *Id.* at 3; Greisiger Reply Decl. at 1, ¶ 4.

1   Defendant goes on to reject Plaintiff's assertion that Defendant's knowledge of Plaintiff's residency is

2   sufficient to give rise to personal jurisdiction, arguing again that there is no personal jurisdiction over

3   Defendant and/or that venue should be transferred to Arizona.

4   **III.    ANALYSIS**

5
6         **A.    Priority in Deciding Questions of Subject Matter Jurisdiction, Personal Jurisdiction and Venue**

7        This motion implicates matters of subject matter jurisdiction, personal jurisdiction and venue.

8   Normally, a court will examine subject matter jurisdiction before turning to personal jurisdiction due to

9   "both expedition and sensitivity to state courts' coequal stature." *Ruhrgas AG v. Marathon Oil Co.*, 526

10  U.S. 574, 587-88 (1999).  Further, consideration of personal jurisdiction typically precedes venue because

11  the former concerns "the court's power to exercise control over the parties" while venue "is primarily a

12  matter of choosing a convenient forum." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180

13  (1979) (citations omitted).  Accordingly, the Court considers subject matter jurisdiction first, followed by

14  personal jurisdiction and then venue.

15        **B.    Subject Matter Jurisdiction**

16            **1.    Legal Standard**

17       Under the federal removal statute, 28 U.S.C. § 1441(a), a defendant may remove to federal court

18  any civil action filed in state court over which federal courts have original jurisdiction. *See Wisconsin Dep't*

19  *of Corr. v. Schacht*, 524 U.S. 381, 386 (1998).  Plaintiff does not assert a federal claim; thus this Court

20  may have subject matter jurisdiction only on the basis of diversity jurisdiction pursuant to 28 U.S.C. §

21  1332(a), which requires that all plaintiffs be diverse from all defendants, and that the value of the case in

22  controversy exceed $75,000.

23       "Generally, the amount in controversy is determined from the face of the pleadings." *Crum v.*

24  *Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) (citations omitted).  "The sum claimed

25  by the plaintiff controls so long as the claim is made in good faith." *Id*. (*citing St. Paul Mercury Indem.*

26  *Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938)).  Where the complaint does not set forth a dollar

27  amount of damages, however, the removing defendant has the burden of proving by a preponderance of

28  evidence that the amount in controversy exceeds the jurisdictional requirement. *Sanchez v. Monumental*

**United States District Court**
For the Northern District of California

*Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Id*.

"[J]urisdiction must be analyzed on the basis of the pleading filed at the time of removal without reference to subsequent amendments." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (quoting *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1213 (9th Cir. 1998)). "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *Red Cab*, 303 U.S. at 293.

In determining whether the amount in controversy requirement is met, courts may consider not only damages but also the cost to the defendant of specific performance. *See Sanchez*, 102 F.3d at 405 (*citing Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount-in-controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action"). Courts also may consider reasonable attorneys' fees if that are recoverable under a statute or contract. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

### 2.    Value of Relief Sought by Williams

Because Plaintiff does not specify a dollar amount of damages in his Complaint, Defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy requirement is met. *See Sanchez*, 102 F.3d at 404. The Court concludes that Defendant has met this burden based on the prayer for specific performance in Plaintiff's Complaint. In particular, Defendant has provided a declaration stating that the current market rate for the house Williams purchased is $260,845, which is over $90,000 more than the price specified in the Purchase Agreement plus the additional cost of the upgrades in the addenda. *See* Greisiger Reply Decl. at ¶ 4. This amount satisfies the amount in controversy requirement.

The Court rejects Plaintiff's suggestion that the value of specific performance should not be considered because specific performance is impossible, given that the addenda required title to be transferred by December 28, 2004. In order to accept this argument, the Court would have to read the

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Complaint as requesting relief that could not have been awarded even at the time the action was filed (in

2   February 2005).  The Court declines to adopt such a tortured reading of the Complaint.  Rather, a more

3   sensible reading of the Complaint is that Plaintiff in his request for specific performance sought to obtain title

4   to the Property, as envisioned by the Purchase Agreement.  The Court also rejects Plaintiff's attempt to

5   limit the amount in controversy by stipulation.  As discussed above, the amount in controversy is considered

6   on the basis of the complaint at the time of removal.      Defendant has shown by a preponderance of the

7   evidence that the amount in controversy requirement is satisfied and this Court has subject matter

8   jurisdiction over the action.

9          **B.       Personal Jurisdiction**

10                 **1.       Legal Standard**

11          In response to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(2) of the

12   Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the exercise of personal

13   jurisdiction is proper.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Cubbage v. Merchent*,

14   744 F.2d 665, 667 (9th Cir. 1984).  Where the court does not hold an evidentiary hearing but decides

15   issues of jurisdiction based upon the pleadings and supporting affidavits, the plaintiff need only make a

16   prima facie case, and the court presumes that uncontroverted facts set forth therein are provable.  *Unocal*,

17   248 F.3d at 922 (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)); *Bancroft & Masters,*

18   *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000).  Factual conflicts which arise in the

19   parties' affidavits must be resolved in the plaintiff's favor.  *Unocal*, 248 F.3d at 922 (quoting *AT & T v.*

20   *Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).  On the other hand, if the Court

21   holds an evidentiary hearing or proceeds to trial, plaintiff bears the ultimate burden of establishing personal

22   jurisdiction by a preponderance of the evidence.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d

23   1280, 1285 (9th Cir. 1977).

24                 **2.       General and Specific Jurisdiction**

25          Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts in California

26   may exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution.  *Core-*

27   *Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993).  The Due Process Clause, in turn, allows

28   federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and systematic

**United States District Court**
For the Northern District of California

1   contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or 2) the

2   defendant has had sufficient minimum contacts with the forum to subject him or her to the specific

3   jurisdiction of the court. *Id.* As it is undisputed that there is not general jurisdiction over Defendant, the

4   remainder of this section addresses specific jurisdiction.[6]

5            To determine whether a court may exercise specific jurisdiction over a defendant, the court must

6   first inquire whether the nonresident defendant "established 'minimum contacts' with the forum State" via

7   "purposeful availment" of the benefits and protections of that State's laws. *Burger King Corp. v.*

8   *Rudzewicz*, 471 U.S. 462, 474-75 (1985). Courts must then consider the reasonableness and

9   foreseeability of suing a noncitizen based upon his contacts: bringing the noncitizen to court in a distant

10  forum must comport with Due Process norms of "fair play and substantial justice." *Int'l Shoe Co. v. State*

11  *of Washington*, 326 U.S. 310, 320 (1945). Foreseeability alone is not a sufficient basis for exercising

12  personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (holding

13  that there was no personal jurisdiction over automobile manufacturer in state with which it had virtually no

14  contacts even though it was foreseeable that automobile might cause harm in that state).

15           Applying the principles of *Burger King*, the Ninth Circuit has developed a three-prong test to

16  evaluate whether a defendant's contacts allow a State to subject him to specific jurisdiction:

17              (1) The nonresident defendant must do some act or consummate some
                transaction with the forum state or perform some act by which it
18              purposefully avails itself of the privilege of conducting activities in the forum
                state, thereby invoking the benefits and protections of its laws;
19
                (2) the claim must arise out of or result from the defendant's forum-related
20              activity; and/or

21              (3) the exercise of jurisdiction must be reasonable.

22

23   _____

24        [6] While objections to personal jurisdiction can be expressly or impliedly waived, *see* Fed. R. Civ. P
     12(h)(1), a defendant's choice to first remove an action to federal court before seeking to challenge personal
25   jurisdiction does not constitute a waiver of objections to personal jurisdictional. *See Diesli v. Falk*, 916 F.
     Supp. 985, 994 (C.D. Cal. 1996) (noting, in dictum, that a defendant does not waive jurisdictional challenges
26   by removing from state to federal court) (quotation omitted); *Product Components, Inc. v. Regency Door*
     *& Hardware, Inc.*, 568 F. Supp. 651, 655 (S.D. Ind. 1983) ("Upon removal a defendant may assert any
27   defense that would have been available to him in state court and which has not been lost through the operation
     of either Fed. R. Civ. P. 12(g) or (h)."); *cf. Schacht*, 524 U.S. at 389-90 (holding a state can implicitly waive
28   sovereign immunity defenses by removal to federal court).

1     *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2001).  If the plaintiff

2     meets the first ('purposeful availment') and second ('arising out of') prongs, the defendant bears the burden

3     of proving that the exercise of personal jurisdiction is unreasonable.  *See Sinatra v. Nat'l Enquirer*, 854

4     F.2d 1191, 1198 (9th Cir. 1987) (citing *Corporate Inv. Brokers v. Melcher*, 824 F.2d 786, 790 (9th

5     Cir. 1978)).

6                **3.**        **Purposeful Availment**

7          Defendant asserts that it did not purposefully avail itself of the benefits of the laws of California by

8     contracting with Plaintiff and, therefore, that there is no personal jurisdiction.  The Court agrees.

9          Defendant has presented evidence that it took no affirmative acts to sell its properties to California

10    residents in general or to Plaintiff specifically.  Rather, Plaintiff approached Defendant via an Arizona real

11    estate agent to buy an Arizona property.  There is no evidence in the record that any Brown representative

12    ever traveled to California to consummate the transaction with Plaintiff.  In fact, the only contacts with

13    California in this case are an unspecified number of telephone calls – some of which apparently were with

14    MDJ rather than Defendant – and, apparently, the exchange of at least one document (the Purchase

15    Agreement).  Under very similar circumstances, at least one district court has held that there was no

16    personal jurisdiction.  *See Siskiyou Props., L.L.C. v. Bennett Holdings L.C.*, 1999 WL 1038729 (D.

17    Or.), *1, *5, *aff'd* 13 Fed. Appx. 553, 556 (2001).

18          In *Siskiyou*, an individual, Eric Bunn, who assigned his rights to an Oregon company, Siskiyou,

19    entered into a purchase agreement with an Idaho company, Bennett, for the purchase of real property

20    located in Idaho.  *Id*. at * 1.  The property was not conveyed to Bunn or Siskiyou, and Siskiyou sued

21    Bennet in Oregon for specific performance.  *Id*.  Bennett brought a motion to dismiss on the basis that the

22    court lacked personal jurisdiction.  Siskiyou argued that there was personal jurisdiction based on numerous

23    communications by telephone, mail and facsimile regarding the transaction.  *Id*. at * 4.  The court disagreed.

24    It reasoned as follows:

25                    The existence of a contract with a resident of the forum state is insufficient
                   by itself to create personal jurisdiction over the nonresident. . . . However,

26                    the Supreme Court also stated that "with respect to interstate contractual
                   obligations, we have emphasized that parties who 'reach out beyond one

27                    state and create continuing relationships and obligations with citizens of
                   another state' are subject to regulation and sanctions in the other State for

28                    the consequences of their activities." . . . . Acknowledging this rule of law,

**United States District Court**
For the Northern District of California

the Ninth Circuit has stated that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." . . . The interaction between Bennett and Bunn (the original party to the Agreement) was an isolated sale transaction that . . . did not create the type of continuing relationship or continuing obligations to Oregon residents or business entities that would allow this court to exercise personal jurisdiction over Bennett. Furthermore, although there may have been a large amount of documentation and communications exchanged between Bennett and Bunn as part of the sale, those contacts are insufficient to create personal jurisdiction in the absence of a representative or agent of Bennett traveling to Oregon as part of the transaction.

*Id*. at *5.

The Court finds the reasoning of *Siskiyou* persuasive and similarly concludes that under the circumstances here, the contacts between Williams and Brown are not sufficient to show purposeful availment.  Therefore, the Court lacks personal jurisdiction over Defendant.

**C.     Venue**

Having determined that the Court lacks personal jurisdiction over Defendant, the Court turns to the question of whether it should dismiss the action or transfer it to Arizona, where personal jurisdiction would likely exist.  The Court concludes that dismissal is appropriate.

Under 28 U.S.C. § 1404(a), a court may transfer venue for "the convenience of the parties" or "in the interest of justice."  Many district courts have concluded that it is permissible to transfer venue under 28 U.S.C. § 1404(a) regardless whether the court has personal jurisdiction over the defendant.  *See Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211-15 (D. Haw. 2002).  Here, however, neither convenience nor justice require such a transfer.  First, Defendant has not made the sort of strong showing of inconvenience that courts have found sufficient to upset the plaintiff's choice of forum.  *See Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Second, transfer rather than dismissal is not required in the interest of justice because Plaintiff has made no showing that he stands to lose any part of his cause of action if it is dismissed.

**IV.     CONCLUSION**

The Motion is GRANTED.  This action is DISMISSED without prejudice for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

11

IT IS SO ORDERED.

Dated: July 11, 2005

                            /s/ Joseph C. Spero
                            JOSEPH C. SPERO
                            United States Magistrate Judge

**United States District Court**
For the Northern District of California